Delbert Allen GIBSON and A. L. Reeves, Jr., Appellants,

v.

The STATE of Texas, Appellee.

No. 50197.

Court of Criminal Appeals of Texas.

Nov. 19, 1975.

Rehearing Denied Feb. 11, 1976.

C. Anthony Friloux, Jr., Houston, Rodger M. Zimmerman, San Marcos, for appellants.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

Appellants and a third codefendant who did not appeal his conviction waived trial by jury and entered pleas of guilty before the court to the offense of burglary with intent to commit theft. The trial court denied probation to these appellants and sentenced each to five years' confinement in the Texas Department of Corrections.

Appellants raise five grounds of error challenging the voluntariness of their guilty pleas and the refusal of the trial judge, after assessment of punishment, to permit withdrawal of the pleas and award new trials. The substance of all grounds of error is stated in appellants' brief as follows:

"The sole issue is 'whether the plea by Gibson and Reeves was voluntarily made, or whether in truth and fact, it was induced by the plea bargaining guarantee of the State and the Sheriff?' "

The record on appeal before us contains transcribed court reporter's notes from hearings on four different days. On May 16, 1974, the pleas of guilty were entered and accepted, and appellants were found guilty. On July 11, 1974, appellants again appeared and punishment was assessed. On August 28, 1974, the court heard and denied appellants' motion for new trial. Finally, on November 21, 1974, appellants were called before the court for formal pronouncement of sentence.

On May 16, 1974, before accepting appellant Gibson's plea of guilty, the trial judge made the following inquiries, among others:

"THE COURT: Have you been persuaded to plead guilty against your will?

"THE DEFENDANT: No, sir.

" . . .

"THE COURT: Have you been promised anything in this case—

"THE DEFENDANT: No, sir.

"THE COURT: —to plead guilty. You know that if you plead guilty in this case, and the evidence shows that you're guilty, that the attorneys may make a recommendation to the Court, and that's all that is, a recommendation. I do not have to take the recommendation.

"THE DEFENDANT: Yes, sir.

"THE COURT: I will consider it, but that's all; just consider it. If they recommend that you be granted probation, I may deny that recommendation and send you to the penitentiary for as much as twelve years. You understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Knowing all that, do you still plead guilty in this case?

"THE DEFENDANT: Yes, sir."

The following inquiries were made of appellant Reeves:

"THE COURT: Has anyone promised you anything to plead guilty?

"THE DEFENDANT: No, sir.

" . . .

"THE COURT: I don't know whether I told A. L. Reeves or not, but the recommendation of the District Attorney or the State is nothing more than a recommendation. He may recommend probation and I could still send you to the penitentiary.

"THE DEFENDANT: Yes, sir."

After accepting the pleas of guilty, the trial judge further stated:

"In addition to announcing judgment here, if you should be granted probation, if you should be, and don't think that I'm saying that you're going to be because I don't know, if your records are not sufficient, your past records are not sufficient to warrant what I think would be a good probation risk, well, I will send you to the Department of Corrections. . . ."

On July 11 the case was called for assessment of punishment.[1] Prior to assessment of punishment the prosecutor recommended probation and defense counsel made the following statement to the court:

"Judge, I would respectfully request the Court to be very compassionate in this case and grant these boys probation. The term of probation is not that important. Mr. Fielder has seen fit after reading all the investigation to recommend probation. I know that you're the final word. But we would urge upon the Court to exercise extreme leniency in this case and grant all three of them probation. Thank you."

The court assessed punishment in each case at five years and denied probation. At that point appellants sought to withdraw their guilty pleas, and defense counsel stated as grounds:

" . . . Of course, the State has made its recommendation for probation, realizing, of course, it's discretionary with the Court. But, nevertheless, the decision to enter a plea of guilty was based upon entirely and solely the recommendation for probation and the delusive hope of getting probation. . . ."

The trial court refused to allow withdrawal of the pleas.

Subsequently appellants filed motions for new trial alleging in part that they entered pleas of guilty only because they had been guaranteed probation. Attached was an affidavit by Sheriff Bobby Kinser, read into evidence, in which it is stated:

" 'I am aware of the fact that none of the Defendants in this case would have changed their plea of "Not Guilty" to a "Guilty" plea had they not been assured that they would receive probation."

Also attached was an affidavit by District Attorney Richard Fielder which recites in part:

" 'I am cognizant of the allegations contained in the foregoing verified Motion for New Trial by the Defendants, Delbert Allen Gibson and A. L. Reeves, Jr., and said allegations are true and correct. Further, in an effort to fairly represent the people of the State of Texas, and by the authority vested in me as District Attorney of the 22nd Judicial District, I made an agreement with the Defendants, Delbert Allen Gibson, A. L. Reeves, Jr., and Larry Wayne Miller, and their attorney of record, Rodger M. Zimmerman, to recommend probation in their case, if they would change their pleas from "Not Guilty" to "Guilty." The basis for this agreement was to move the trial docket and to see that restitution was

---

1. Cf. *Faurie v. State*, Tex.Cr.App., 528 S.W.2d 263 (1975).

made. Restitution was made and the interest of the State of Texas was best served by this "plea bargaining" procedure.

" 'There is not the slightest doubt in my mind that had these Defendants thought that they would not get probation, none of them would have changed their pleas of "Not Guilty" to "Guilty" and thereby given up their fundamental right to a trial by jury." '

Both appellants testified at the hearing on the motion. Both testified that they were promised probation, yet both also admitted that at the time they entered their pleas they told the court that they had been promised nothing and acknowledged that the trial judge had explained to them that any recommendations made would be nothing more than recommendations, and the trial court could sentence them to the penitentiary despite any recommendation of probation.

Following presentation of evidence at the hearing on the motion for new trial, counsel argued:

" . . . But I am convinced that these two young men, all three of these young men, would not have changed their pleas if in their own mind they weren't convinced that they were not going to go to the penitentiary. I realize my duty as defense counsel with these individuals; and going further than that duty, knowing what this Court has done in the past or what other courts do in the past. I talked with these Defendants about it and I said, 'Regardless of what the District Attorney does, this judge has the power to do whatever he wants to do within what we're talking about. But when the State's attorney and the law enforcement agencies all get behind and recommend probation, and will go so far as to promise and add to that if the Court does not for any reason at all 'I'll join with you,' then I think, Judge, to send these two young men to the penitentiary would be a real trick. . . . "

On November 21 appellants appeared for sentencing. Prior to pronouncement of sentence the trial judge permitted the sheriff, defense counsel and himself to be called as witnesses by the defense "to make a record on some matters." Counsel stated that he had filed a "Motion to Set Aside Judgment on Plea of Guilty and Assessment of Judgment [sic?]." The testimony was not relevant to or offered in support of any of the grounds stated in Article 42.07, V.A.C.C.P., as reasons to prevent sentence.[2]

In their brief appellants assert:

2. If properly before us (Cf. *McCall v. State*, Tex.Cr.App., 512 S.W.2d 334), the record made at that hearing reflects:
The sheriff testified:
"Q. All right. Is it your testimony that the plea bargaining took place between the prosecution with you yourself as the investigating officer present, the defendants and their lawyer, Mr. Zimmerman?
"A. Yes.
"Q. As a result of that plea bargaining an agreement was reached, was it not, for probation?
"A. That's correct.
"Q. And at that time were the defendants told that if they did plea they would get probation, would not have to go to jail.
"A. Yes, sir."
Defense counsel testified:
"Q. All right. As a result of a negotiation did the District Attorney agree that he would recommend probation and as-

sured them they would not get any jail time.
"A. Yes, sir.
"Q. As a result of that, after your conference with your clients following the negotiation, did they then agree to change their plea on that assurance?
"A. Yes, sir. I might add to that, the District Attorney told us that in the event something happened, that the Court would not go along with its plea, that if necessary, and went to that extent, he would join with us in not opposing a Motion for a new trial, to put them back in the stature they were in prior to changing their plea for which he did, and for which I respect him in living up to his word in doing so, and he did.
" . . .
"Q. Was there any question in your mind when you discussed the matter after the plea bargaining with the clients that the plea would be honored?

Note 2—Continued

"A. There really wasn't any question in my mind. I knew the record of the individuals. I knew it was always an outside possibility of being a discretionary matter with the Court that probation would not necessarily be granted. But I had no earthly idea, nor did I suspect of my wildest dreams, that if this honorable Court would not grant probation after the State had recommended it, and after they changed their pleas by a plea bargaining system, that he would not allow them to withdraw their plea and put them back in the same stature they were in prior to changing their plea.

"Q. All right. It was on that feeling or on that decision you made and based on your prior experience never having had any problem in this area that you went ahead and recommended that the bargain that had been made in their presence be honored.

"A. Yes, sir.

"Q. And from your discussion with the client can you testify whether or not they would have gone forward if there had been any question in their mind there was any chance of getting jail time?

"A. No, sir. There's absolutely no question in my mind looking back now that, or at the time, there was no question in my mind but that if they were not assured and they didn't really believe that they were going to get probation they wouldn't have changed their plea; and, further, if there was any remote idea on their mind that they would not be allowed to withdraw their plea if probation was not granted that they would go to the penitentiary, they would never have considered it.

"Q. Now, this was, I guess, was communicated to the defendants by yourself, and the investigating officer and the prosecutor.

"A. Yes, sir.

"Q. Now, in regard to the admonition that was given to the defendants which the Court has advised that he was not bound by the recommendation, and so forth, had you heard this admonition on the other cases where the plea bargaining had been honored?

"A. Yes, sir.

"Q. In those cases the defendants likewise say, 'No. The defendant had no bargain.'

"A. That's correct.

"Q. And you're familiar with this practice throughout the State, are you not, trying cases in other districts.

"A. Yes, sir.

"Q. Is that the procedure generally followed as far as your experience has been?

"A. I know of no other procedure.

"Q. We have no plea bargaining statute in Texas as such which specifies particular sequential questions. Do we?

"A. No, sir.

"Q. All right. Is it your judgment that based on the conversations with the two defendants in this cause that they acted in accordance with what they thought was an agreement which would have resulted in their getting probation in this ultimate decision?

"A. Yes, sir, or in the alternate; at least not have a one-way ticket to the penitentiary."

The trial judge testified:

"Q. Yes, sir. At the time the plea and the recommendation was made the Court had the matter referred to the probation officer for an investigation.

"A. Right.

"Q. All right. At the time the sentencing took place the Court then was aware of the recommendation of the State and also had before it the results of the probation investigation. The Court at that time, as I recall from the record, advised that he was going to, one boy, was going to be given probation. The sentence as to the other two, they had five years, I think, in the Texas Department of Corrections, as the Court could not give probation. I think the Court might have specified the reason for it. Your Honor, prior to this time, since this District Attorney has been in office, I'll ask the question as to the predecessor, has the Court up until the date of the Reeves and Gibson case on recommendation of the State for probation where plea bargaining had taken place, has the Court without any notice on either parties and in specific cases refused to accept the recommendation, even though the Court was then made aware that a plea bargaining had been made, decide that the Court would not follow the bargain and subsequently sentence them to jail time?

"A. I have.

"Q. Does the Court recall prior to this Gibson and Reeves case any specific cases where this wasn't given?

"A. I don't specifically remember one in Hays County. However, at or about the time these pleas were entered and the plea bargaining was discussed between the defense, and the defendant, and the State's attorney, the recommendation was made to the Court after a presentence investigation was presented to the Court, instead of the defendant having two minor violations I found, as a result of a wrap sheet that was not presented to the Court at the time the plea was entered but was then presented to the Court in the presentence investigation, that the defendant had some ten or twelve arrests in the last three or four years; at which time I declined to follow the recommendation, and sentence the defendant to five years in the

"There is no dispute of the following material facts contained in the Statement of Facts:

" . . .

"(6) That the district attorney Fielder guaranteed Defendants they would get probation and not go to jail if they changed their plea.

"(7) That the sheriff guaranteed the Defendants if they made restitution and changed their plea, they would get probation and not go to jail.

"(8) That the defense counsel assured Defendants the bargain and guarantee would be kept by the State.

"(9) That the Defendants would not have changed their plea except for this guarantee."

■ A reading of the record as a whole, including those portions of the record quoted above, reveals that the assertions made by appellants that they were "guaranteed" probation are by no means established as undisputed fact. Appellants at the time of entering their pleas informed the court that no promises had been made and indicated to the court that they understood any recommendation of probation would not be binding on the court, but to the contrary, the court could sentence them to imprisonment notwithstanding any recommendations of probation. Statements by defense counsel acknowledged full understanding on his part and communication to his clients of the principle of law that on the decision of whether to grant probation the judge is "the final word" and "it's discretionary with the court." The ultimate issue, as framed in appellants' brief, of whether ap-

pellants' guilty pleas were induced by a guarantee of probation, was, on the record before us, an issue of fact which the trial court resolved against appellants. The record contains evidence sufficient to support the trial court's implied finding that there was no guarantee, but that instead there was nothing more than a traditional and valid plea bargain by which the prosecutor agreed to recommend probation. It appears that upon failure of the trial court to follow the recommendation for probation appellants sought to withdraw their pleas, not because of failure of a bargain guaranteeing probation, but because their assessment of the weight that the prosecutor's recommendation would carry with the trial court proved inaccurate.

The record does not show that appellants' pleas were induced by a guaranteed probation and the grounds of error are overruled.

■ Suggested by the record but not adequately developed in the evidence or argued on appeal are possible claims of prosecutorial misconduct, ineffective assistance of counsel, or both. The American Bar Association Standards for Criminal Justice (though not adopted in this State), relating to the Prosecution Function, Approved Draft, 1971 (Section 2.8(a)), state, "It is unprofessional conduct for a prosecutor intentionally to misrepresent matters of fact or law to the court." The Standards relating to the Defense Function, Section 1.1(d), likewise state, "It is unprofessional conduct for a lawyer intentionally to misrepresent matters of fact or law to the court." Regarding plea bargains, the Standards relating to the Prosecution Function state in Section 4.3(a) and (b):

Note 2—Continued

penitentiary for burglary. On rehearing I reduced it to four when he made some restitution.

" . . .

"Q. All right, sir. Your Honor took part in the proceeding and during the course of the actual sentencing itself preparatory to the Motion for New Trial. The Court did give the admonition and did make a statement that he was not bound by, according to the statutes itself, any

recommendation that had been made by the State. The Court's well aware from the record the defendants' reply to the Court's question 'Have you been promised by anybody . . .' and the rest of the admonition, they said, they responded in the negative. I would ask the Court this. Generally speaking, in plea bargaining cases isn't it true where there is a recommendation from the State that the defendants respond in this manner?

"A. It is."

"(a) It is unprofessional conduct for a prosecutor to make any promise or commitment concerning the sentence which will be imposed or concerning a suspension of sentence; he may properly advise the defense what position he will take concerning disposition.

"(b) A prosecutor should avoid implying a greater power to influence the disposition of a case than he possesses."

The following Standards are proposed in the delineation of the Defense Function:

Section 5.1(b):

"It is unprofessional conduct for a lawyer intentionally to understate or overstate the risks, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea."

Section 7.5(a):

"It is unprofessional conduct for a lawyer knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity."

Although the record before us no more supports findings of conduct violative of the above quoted standards than it supports a finding that the pleas were induced by a guarantee of probation, we can only conclude that were it to support the latter, it almost certainly would support the former. The prosecutor and defense counsel are without authority to bind the court to a fixed punishment or to probation by plea negotiation. An attempt to base a negotiated plea upon such a guarantee would violate Prosecution Function Standard 4.3(a) and (b), supra, and Defense Function Standard 5.1(b), supra. To then represent to the court at the entry of the plea that no plea bargain has been struck or that no improper plea bargain has been struck would violate Prosecution Function Standard 2.8(a), supra, and Defense Function Standard 1.1(d), supra. To stand silent while the defendant makes such representations known by the prosecutor and defense counsel to be false would possibly violate both previously cited standards and Defense Function Standard 7.5(a), supra.

■ As previously stated, the record before us does not prove and the brief does not assert violation of the above quoted standards. The record supports the implied findings and the ruling of the trial court. Nevertheless, we have quoted from the Standards for Criminal Justice in order to draw the attention of the bench and bar to the need for proper conduct of plea negotiations, and demonstrate the soundness of the recommended practice upon entry of a guilty plea of inquiring whether the plea is the consequence of negotiations, and if so, what the terms of the negotiated plea are. Cf. *Galvan v. State*, Tex.Cr.App., 525 S.W.2d 24, in which the trial court, as in the instant case, followed "the highly desirable practice" (*Galvan v. State*, 525 S.W.2d at 26) of explaining to the accused that a recommendation is only a recommendation, and does not bind the Court.[3] No less desirable a practice is that the results of any negotiations upon which the plea is based be made known to the trial court and made a part of the record. See *Cruz v. State*, Tex.Cr.App., 530 S.W.2d 817. Since proper-

3. We also note that Art. 26.13, V.A.C.C.P., as amended, effective after the trial in this case, provides:

"(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:

"(1) the range of punishment attached to the offense; and

"(2) *the fact that any recommendation of the prosecuting attorney as to punishment is not binding on the court.*

"(b) No plea of guilty or plea or nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.

"(c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." (Emphasis added.)

ly negotiated pleas are acceptable and improper plea bargains render the plea involuntary, there is nothing to lose and all to gain by bringing the fruit of negotiations out of the closet and into the record.

The record in the instant case supports the conclusion that appellants entered their pleas of guilty voluntarily and knowing that the court was not bound by the prosecutor's recommendation of probation.

The grounds of error are overruled and the judgments are affirmed.

DOUGLAS, J., not participating.

ROBERTS, Judge (dissenting).

This case goes to the heart of the plea bargaining process, questioning the reasons for its very existence. It demonstrates how a common malfunction of the process results in further delays of criminal justice administration, strained relations between bench and bar, and manifest injustice to criminal defendants.

The facts surrounding these guilty pleas are amply set forth in the majority opinion. They present an all too familiar scenario. Accepting the testimony most favorable to the State, it is seen that the defendants changed their pleas to guilty in exchange for the prosecutor's recommendation of probated sentences. Although they were admonished at the time by the trial court that he was not bound to accept the prosecutor's recommendations, and were in all probability so informed beforehand, they quite reasonably expected to receive probated sentences. They would never have changed their pleas if they had thought for a moment that they would wind up in the penitentiary. However, the trial judge rejected the terms of the plea bargain, as was his prerogative. It is a fact, however, that this prerogative is never exercised by many judges, and only rarely by the rest, for the obvious reason that *it defeats the whole purpose of the plea bargaining system.*

That the plea bargaining process is an indispensable element of our criminal justice system there can no longer be any doubt. See, e. g., *Guster v. State*, 522 S.W.2d 494 (Tex.Cr.App.1975) (concurring opinion); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The bedrock assumption of the process was stated by the Supreme Court in *Santobello* as follows:

".  .  . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.*, at 262, 92 S.Ct. at 499.

When a defendant does not obtain the sentence he bargained for, even though the prosecutor made the recommendation agreed to, there has been in a very real sense a failure of consideration flowing to the defendant.

Consider briefly the consequences of affirming convictions such as these. Defense lawyers are going to be much more hesitant to enter plea bargains with the prosecutor's office—especially in Hays County—if the judge is simply going to ignore them. This should necessitate trials in at least some cases which would otherwise be settled by negotiated pleas.

"An accused will be reluctant to engage in negotiations or to enter into a plea agreement if he cannot withdraw his plea of guilty when he does not obtain the expected concessions he was promised." *State v. Wolske*, 280 Minn. 465, 160 N.W.2d 146, 151–52 (1968).

Other aspects of the delay in criminal justice administration caused by the judge's rejection of the plea bargain can be foreseen in the lengthy wrangling over motions to withdraw the guilty plea and in motions for new trial, as in this case, and in appeals such as this.

Moreover, rejection of plea bargains can only lead to strained relations between the bench and bar. Although this case involved uncharacteristic cooperation between de-

fense counsel, the prosecutor's office, and law enforcement officials, the record reveals lack of communication and distrust where the trial judge is concerned. When a judge lends no more credence to a plea bargain than was exhibited in the instant case, he is going to disappoint not only the defense bar, but the prosecutor's office as well.

Consider also the cost in respect for the system that cases such as this engender.

"It is important for all segments of our society to believe that our court systems dispense justice. This includes the criminals themselves as well as the law abiding citizens and especially those criminals who have cooperated fully in police investigations." *Dube v. State*, 257 Ind. 398, 275 N.E.2d 7 (Ind.1971).

To that group of criminals might be added those who uphold their end of the bargain and plead guilty. The disillusionment with the criminal justice system already festering in our jails and prisons cannot help but be exacerbated by cases such as those of Gibson and Reeves. And it is not likely that the general public will more readily perceive the justness of such results.

The denial of motions to withdraw guilty pleas in such cases also results in manifest injustice to the defendant. His guilty plea usually waives numerous rights, including the right to a jury trial, the right to confront witnesses and the right to assert whatever defenses he thinks he has. What is the consideration for these concessions if the court rejects the bargain and the plea is irrevocable?

"More important, we believe, if withdrawal is refused upon proof of an unkept and unfulfilled plea agreement, defendant has been in effect deprived of his right to a jury trial and the benefit of the presumption of innocence—constitutional safeguards guaranteed to every accused without regard to the probability of his guilt or the truthfulness of any pretrial admissions or confessions." *State v. Wolske, supra* at 151.

What can be more unfair than the procedure countenanced by the majority, whereby a defendant must uphold his end of the bargain, to his irrevocable prejudice, before the court decides whether or not the prosecution's side of the bargain will be upheld?

There has been a growing recognition by other jurisdictions of the problems discussed above. A variety of safeguards surrounding guilty pleas have been adopted, but the one I would urge today is simply this: when the trial judge rejects a plea bargain, the defendant, upon timely request, should have the right to withdraw his guilty plea.

There is admittedly no statutory or case authority in Texas for this rule. In fact, the rule urged would have the effect of overruling express authority to the contrary. *Williams v. State*, 487 S.W.2d 363 (Tex.Cr.App.1972). The cases of *Trevino v. State*, 519 S.W.2d 864 (Tex.Cr.App.1975), *Galvan v. State*, 525 S.W.2d 24 (Tex.Cr.App. 1975), and *Cruz v. State*, Tex.Cr.App., 530 S.W.2d 817 (this day decided) to the same effect are distinguishable. In none of those cases was there a timely request to withdraw the guilty plea before imposition of sentence.[1] It should also be noted that

1. Since sentences are not usually probated until after a pre-sentence report has been filed and the time for filing motion for new trial has expired, the sentencing hearing is often the first indication a defendant has that probation will be denied. At this time, good faith would require that the trial judge indicate his dissatisfaction with the prosecutor's recommendation, thereby allowing a timely motion to withdraw the guilty plea before imposition of sentence. It is noted that Trevino, Galvan and Cruz were all sentenced by the same trial judge, who did not afford them this advance warning of his intentions.

See also the American Bar Association Standards Relating to Pleas of Guilty (Approved Draft, 1968), Sec. 3.3(b); The American Law Institute's Model Code of Pre-Arraignment Procedure (Proposed Official Draft, 1975), Sec. 350.5(4), and Rule 11(e), Fed.Rules of Crim.Proc., eff. Dec. 1, 1975, containing similar recommendations.

Texas subscribes to a liberal policy touching withdrawal of guilty pleas. *Garcia v. State*, 91 Tex.Cr.R. 9, 237 S.W. 279 (1922).

Perhaps concerned about injustices in the area of voluntary guilty pleas, the 64th Legislature recently amended the applicable statute, Art. 26.13, V.A.C.C.P., by adding among other things the following required admonishment prior to acceptance of such pleas:

"(2) the fact that any recommendation of the prosecuting attorney as to punishment is not binding on the court."

This action codified the recommendations of some cases as to "the better practice". *Trevino v. State*, 519 S.W.2d 864, 868 (Tex.Cr. App.1975); *Galvan v. State*, 525 S.W.2d 24, 26 (Tex.Cr.App.1975). It is nevertheless clear that the statutes do not contemplate the rule urged today. It should be noted, however, that such a rule would not rob the trial judge of his discretion to accept or reject a guilty plea. This discretion is essential if the trial judge is to prevent oppressive or unfair bargains and to protect the public interest. The rule would merely permit an accused to opt for the uncertainties of trial by changing his plea to not guilty when confronted with a trial judge unwilling to accept the prosecutor's recommendation.

It is neither necessary nor appropriate to defer to the Legislature for fashioning this rule. The Legislature wisely left "delusive hope of probation" out of Art. 26.13 as a factor which might invalidate a guilty plea. See also *Valdez v. State*, 507 S.W.2d 202 (Tex.Cr.App.1974). The Legislature is not blind to the fact that most negotiated guilty pleas are based on some sort of hope of probation. Under the strict language of Art. 26.13, a guilty plea can be accepted even if it is based on a hope of probation which turns out to be delusive. All the rule urged today would do would be to permit the accused to withdraw his guilty plea, upon timely request, if that hope turns out to be delusive. No modification of Art. 26.13 is necessary. Moreover, the amended Art. 26.13 now only requires that a guilty plea be free and voluntary, dropping the proscriptions against fear, persuasion, promises, and delusive hopes of pardon. The way is opened for spreading the terms of plea bargains upon the record, as my Brother Odom has prudently recommended in *Cruz, supra.*

It remains to consider where other jurisdictions stand on this matter. Following the lead of the third[2] and eighth[3] circuits, Congress has finally adopted the long awaited amendments to the Federal Rules of Criminal Procedure. Rule 11(e)(4), effective December 1, 1975 provides as follows:

"Rejection of a Plea Agreement. *If the court rejects the plea agreement, the court shall,* on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, *afford the defendant the opportunity to then withdraw his plea,* and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement." (Emphasis added)

It thus appears that the entire federal system now subscribes to the rule urged today. A majority of the states confronting the issue also permit a defendant to withdraw his guilty plea if the judge rejects the plea bargain.[4] Many of those states rejecting

---

**2.** *United States ex rel. Culbreath v. Rundle*, 466 F.2d 730 (3rd Cir. 1972).

**3.** *United States v. Gallington*, 488 F.2d 637 (8th Cir. 1973), cert. den., 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974).

**4.** Connecticut—*Quintana v. Robinson*, 31 Conn.Sup. 22, 319 A.2d 515 (1973).

Florida—*Davis v. State*, 308 So.2d 27 (Fla. 1975).

Georgia—*Burkette v. State*, 131 Ga.App. 177, 205 S.E.2d 496 (1974).

Illinois—Ill.Sup.Ct. Rule 402(d)(2) (1970); Ill.Rev.Stat.1973, ch. 110A, Sec. 402(d)(2).

Indiana—*Watson v. State*, 300 N.E.2d 354 (Ind.1973).

the rule have done so only after lengthy discussions and over dissenting opinions.[5] Thus, the trend is in the direction of the rule urged here.

Support for the rule can also be found in the proposed revisions to the American Bar Association Standards Relating to Pleas of Guilty (Approved Draft, 1968), Sec. 2.1(a)(ii)(5)[6] and the American Law Institute's Model Code of Pre-Arraignment Procedure (Proposed Official Draft, 1975), Secs. 350.5(4) and 350.6.[7]

The time is right for Texas to join the growing number of jurisdictions permitting withdrawal of guilty pleas, upon timely re-

quest, when the trial court rejects a plea bargain. Only after having been given such an opportunity after the trial judge rejects the plea bargain can a defendant's plea be characterized as voluntary. Accordingly, I would adopt the rule discussed above and reverse these convictions. The causes should be remanded and the appellants given a chance to change their pleas.

DOUGLAS, J., not participating.

5. Iowa—*State v. Fisher*, 223 N.W.2d 243 (Iowa 1974).

Minnesota—*State v. Wolske*, 280 Minn. 465, 160 N.W.2d 146, 152 (1968).

New Hampshire—*State v. Farris*, 320 A.2d 642, 644 (N.H.1974) recommended as "prudent".

New Jersey—*State v. Nuss*, 131 N.J.Super. 502, 330 A.2d 610 (A.D.1974).

Pennsylvania—Rule 319, Pa.Rules of Crim.Proc.; *Commonwealth v. Wilson*, 335 A.2d 777 (Pa.Super.1975).

5. California—*People v. West*, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970).

Massachusetts—*Commonwealth v. Stanton*, 317 N.E.2d 487 (Mass.App.Ct.1974).

Michigan—*People v. Rogers*, 55 Mich. App. 491, 223 N.W.2d 20 (1974).

Missouri—*Huffman v. State*, 499 S.W.2d 565 (Mo.Ct.App.1973).

New Mexico—*State v. Ramos*, 85 N.M. 438, 512 P.2d 1274 (N.M.Ct.App.1973).

New York—*People v. Selikoff*, 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (N.Y. Ct.App.1974), cert. den., 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975).

Texas—*Williams v. State*, supra.

Wisconsin—*State v. McKnight*, 65 Wis.2d 582, 223 N.W.2d 550 (1974).

6. 2.1 Plea withdrawal.

(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

\* \* \* \* \* \*

(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(5) he did not receive the charge or sentence concessions contemplated by the plea agreement concurred in by the court,

and he did not affirm his plea after being advised that the court no longer concurred and being called upon to either affirm or withdraw his plea.

7. Section 350.5. Additional Action to be Taken by the Court Where There is Plea Agreement

\* \* \* \* \* \*

(4) *Ruling on the Plea.* Before accepting a plea pursuant to a plea agreement, the court shall advise the parties whether it approves the agreement and will dispose of the case in accordance therewith. If the court determines to disapprove the agreement and not to dispose of the case in accordance therewith, it shall so inform the parties, not accept the defendant's plea of guilty or nolo contendere, and advise the defendant personally that he is not bound.

\* \* \* \* \* \*

Section 350.6. Sentencing Following Plea

If, at the time of sentencing, the court for any reason determines to impose a sentence more severe than that provided for in a plea agreement between the parties, the court shall inform the defendant of that fact and shall inform the defendant that the court will entertain a motion to withdraw the plea. The court after pronouncing the sentence of a defendant who has pleaded guilty or nolo contendere shall inquire of the defendant personally whether the sentence pronounced violates any agreement or understanding the defendant had with respect to the sentence. If the court determines that the sentence pronounced is inconsistent with an agreement, or that it differs from the defendant's understanding in such a way that it would be unjust to permit the defendant's plea to stand, it shall vacate the plea.