# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LARRY D. RUSSELL, JR., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 84A01-1312-CR-532 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1212-FC-3871

**June 5, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Larry D. Russell, Jr. appeals his sentence following his convictions for five counts of neglect of a dependent, as Class C felonies, and two counts of criminal confinement, as Class C felonies, pursuant to a guilty plea. Russell presents a single issue for our review, namely, whether the trial court sentenced Russell as provided in the plea agreement. But our resolution of this issue requires us to address a more fundamental issue sua sponte, namely, whether Russell's plea agreement is void and unenforceable as a matter of law.[1]

We hold that the sentencing provision in Russell's plea agreement is contrary to law, and we reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Russell and his wife adopted three teenaged children: P.G., B.J., and T.D. ("the children"). Between August 23 and November 23, 2012, Russell engaged in repeated acts of extreme abuse and neglect of the three children. The children lived together in one bedroom, and Russell locked the doors to that bedroom with several padlocks on the outside of the doors. There were no light fixtures in the bedroom, and the windows were covered with plywood. Russell would sometimes lock the children in the bedroom for eighteen to twenty-four hours per day. Russell deprived the children of food and access to a bathroom for extended periods of time. The children devised a way of reaching the kitchen to get food by climbing through a loose panel in the wall and burrowing a tunnel through the inside of the walls and ceiling.

---

[1] On April 2, 2014, we ordered the parties to file supplemental briefs on this issue.

The children would typically urinate in a plastic bottle and store it in a hole in the bedroom wall. When Russell and his wife discovered the bottle of urine, they proceeded to pour the urine over the children's heads. Russell and his wife also rubbed a product called "Icy Hot" on the children's genitals and rectums, and they would duct-tape diapers to the children before the children went to bed. Russell also tied the children to the beds with duct tape and rope. Russell waterboarded the children and bound their arms behind their backs with a belt. Finally, when Russell wanted to make certain that the children would stay quiet, he placed a rolled sock in the mouth of each child and secured it with duct tape.

On November 23, P.G. freed himself from the rope and duct tape Russell had used to keep him in bed, pried the plywood from a window, broke the window, and jumped from the second-story window to the ground below. P.G. then made his way to a hospital and reported the abuse. At that time, P.G. was seventeen years old but weighed only eighty-two pounds.

The State charged Russell with five counts of neglect of a dependent, as Class C felonies; two counts of criminal confinement, as Class C felonies; three counts of criminal confinement, as Class D felonies; and neglect of a dependent, as a Class D felony. On September 25, 2013, Russell pleaded guilty to five counts of neglect of a dependent, as Class C felonies, and two counts of criminal confinement, as Class C felonies, pursuant to a plea agreement. In exchange for his plea, the State agreed to dismiss the remaining four counts. The plea agreement left sentencing open to the trial

court's discretion, but capped the sentence at ten years "pursuant to Indiana Code Section 35-50-1-2(c)."

The trial court accepted the plea agreement and sentenced Russell as follows:

The following statutory aggravating factors have been proven: the harm, injury, loss and damage suffered by the victims in this case is significant, greater than the elements necessary to prove the commission of the crimes, and ongoing; the defendant has a history of criminal or delinquent behavior; and the defendant recently violated the conditions "of any probation, parole, pardon, community corrections placement, or pretrial release" in that on May 30, 2012[,] he was released OR on charges of Domestic Battery, subsequently placed on deferred prosecution in that matter on September 10, 2012, and the instant offenses were committed from August 23, 2012[,] to November 23, 2012.

The court finds the following statutory mitigating factors: defendant agrees to pay restitution. The court finds the evidence does not establish mitigating factors under I.C. § 35-38-1-7.1(b)(2), (b)(6), (b)(7), (b)(8) or (b)(10). The court acknowledges defendant's acceptance of responsibility and his expression of remorse, but finds these factors outweighed by the aggravating factors, and undermined by his statement upon arrest that anyone with children like the victims would have done the same thing.

The nature and circumstances of the crimes are extreme and aggravate the sentence. These were not single, isolated incidents of simply going too far with discipline, or bad parenting skills. The victims in this case were foster children needing a safe, loving, nurturing home. What they got, after being adopted by defendant, was a prison cell, without the amenities, and an existence involving torture, starvation, padlocks, deadbolts, and escape. Defendant's actions were deliberate and time consuming.

While the rest of defendant's home contained reasonably clean and safe living quarters, including a kitchen with enough food for the family, this was not the case for the victims, whose room can only be described as cold, dark, sparse and depressing. It is evident the defendant planned and executed his crimes over a significant period of time. He spent a considerable amount of time turning part of his home into a penal facility for the three victims. One entrance to their room was boarded, with nails, by a large piece of plywood. Defendant affixed to the outside of the other door a series of latches and padlocks, and an elaborate, homemade, "deadbolt" locking bar passing through the door jamb. There were holes in

4

the ceiling tiles, both upstairs and down, where one of the victims attempted to tunnel through the walls, out of his cell, and into the kitchen to obtain food. At night, the children were restrained to their beds with duct tape and rope.

It is apparent the prison-like accommodations were the norm for the victims. They endured inhumane conditions when what they needed, what they wanted, was parents to love and care for them after they had been taken away from their biological parents. Each of the victims deserves justice. The court finds the following to be an appropriate sentence. On each of Counts 1, 4 and 9 involving P.G., the defendant is sentenced to the Department of Correction for eight (8) years, concurrent with one another. On each of Counts 2, 5 and 10, involving B.J., the defendant is sentenced to the Department of Correction for eight (8) years, concurrent with each other, but consecutive to Counts 1, 4 and 9. On Count 3, involving T.D., the defendant is sentenced to the Department of Correction for eight (8) years, consecutive to Counts 1, 4 and 9 and Counts 2, 5 and 10. However, pursuant to the limitation imposed by I.C. § 35-50-1-2, defendant's aggregate, consecutive sentence is limited to ten (10) years. . . .

Appellant's App. at 97-98 (emphases added). This appeal ensued.

## DISCUSSION AND DECISION

Russell contends that "the sentencing order and abstract of judgment issued in this case are confusing and somewhat misleading regarding what sentence Russell was actually given." Appellant's Brief at 4. And he maintains that the trial court "was prohibited from entering any sentence other than 10 total years" pursuant to Indiana Code Section 35-50-1-2(c). Id. Russell asserts that the Department of Correction is treating him "as if he was serving a 24-year sentence with all but 10 years suspended. This has negatively affected his classification status, requiring him to serve his sentence in a more restrictive setting than he otherwise would have." Id. On this argument, we agree with the State that the sentencing order and abstract of judgment are clear that the trial court imposed a ten-year aggregate sentence.

5

That said, the parties and the trial court are mistaken that Russell's sentence is limited to ten years as a matter of law. Indiana Code Section 35-50-1-2(c) provides in relevant part that, except for crimes of violence,[2] the total of the consecutive terms of imprisonment to which the defendant is sentenced for multiple felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony that is one class of felony higher than the most serious of the felonies for which the person has been convicted. "Episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance. I.C. § 35-50-1-2(b).

Our supreme court has explained that, in determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature of the crimes. See Reed v. State, 856 N.E.2d 1189, 1200 (Ind. 2006). Our courts have also held that, where a complete account of a crime can be given without referring to the other offense, the offenses are not an "episode of criminal conduct." Tedlock v. State, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995). Here, the factual basis for Russell's guilty plea encompasses the evidence of multiple acts of neglect and confinement that occurred repeatedly over the course of three

---

[2] Neither neglect of a dependent nor criminal confinement is listed as a "crime of violence" under the statute. See I.C. § 35-50-1-2(a). Even B felony neglect of a dependent, which could have been charged here given the facts as pleaded showing that the children suffered serious bodily injuries, is not listed as a crime of violence under the statute.

months.  Russell's crimes do not constitute an episode of criminal conduct.  Therefore, the law does not require that Russell's sentence be limited.[3]

In Lockhart v. State, 671 N.E.2d 893, 904 (Ind. Ct. App. 1996), we held that the trial court "improperly found Lockhart's molestations of [the child victim] to constitute an 'episode of criminal conduct' and, thereby, erroneously reduced the sentence in accordance with [Indiana Code Section 35-50-1-2]."  And we explained that,

> [a]lthough the trial court has broad discretion in sentencing, it must act within statutorily prescribed limits. Niece v. State, 456 N.E.2d 1081, 1084 (Ind. Ct. App. 1983).  A sentence which is contrary to, or violative of, the penalty mandated by the applicable statute is an illegal sentence. Id.  When the sentence imposed by the trial court is found to be improper, it is the general if not unanimous rule that the trial court has the power to vacate the illegal sentence and impose a proper one. Williams v. State, 494 N.E.2d 1001, 1004 (Ind. Ct. App. 1986); see Devaney v. State, 578 N.E.2d 386, 389 (Ind. Ct. App. 1991) (holding that it is the duty of the appellate courts to bring illegal sentences into compliance even if the correction subsequently increases the sentence).  Imposition of the corrected sentence does not run afoul of the prohibition against double jeopardy. Id.

> The application of I.C. § 35-38-1-7.1 is only required when the defendant engages in an "episode of criminal conduct."  Because Lockhart's actions do not constitute an "episode," the sentence originally imposed by the trial court contravened the statute and is an illegal sentence. See Niece, 456 N.E.2d at 1084.  Accordingly, we remand this cause to the trial court with instructions to impose a statutorily authorized sentence.

Lockhart, 671 N.E.2d at 904-05 (emphases added); see also Young v. State, 901 N.E.2d 624, 626 (Ind. Ct. App. 2009) (holding sua sponte that defendant's sentence was illegal and ordering an increase to the executed portion of his sentence), trans. denied.

Likewise here, Russell's ten-year sentence was based solely on an erroneous application of Indiana Code Section 35-50-1-2.  Russell's offenses do not constitute an

---

[3] Ten years is the advisory sentence for a Class B felony, which is one class higher than the C felonies with which Russell was convicted.

"episode" subject to the limitations imposed by Indiana Code Section 35-50-1-2. On these facts, the sentence imposed by the trial court contravened the statute and is an illegal sentence. See Lockhart, 671 N.E.2d at 904-05.

In their supplemental briefs, the parties concede that Russell's crimes do not constitute an episode of criminal conduct under the statute. Nevertheless, they contend that the plea agreement is valid and enforceable. We cannot agree.

Our supreme court has held that

a plea agreement is contractual in nature, binding the defendant, the state and the trial court. The prosecutor and the defendant are the contracting parties, and the trial court's role with respect to their agreement is described by statute: If the court accepts a plea agreement, it shall be bound by its terms.

Pannarale v. State, 638 N.E.2d 1247, 1248 (Ind. 1994) (citation and quotation omitted). But, "as a general proposition[,] a contract made in violation of a statute is void and unenforceable." Lee v. State, 816 N.E.2d 35, 38 (Ind. 2004).

However, it is also true that if a contract contains an illegal provision that can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract. Harbour v. Arelco, Inc., 678 N.E.2d 381, 385 (Ind. 1997); see also 17A C.J.S. Contracts 297 (1999) ("[T]he fact that one part of an agreement may be void or unenforceable does not render the entire agreement void, if the prohibited and valid provisions are severable, and if the parties would have entered the bargain absent the illegal portion of the original agreement."). These principles apply even where the illegal or otherwise objectionable provision is prohibited by statute.

(Some citations omitted; emphasis added).

Here, the parties attempt to treat the ten-year sentence as severable. But sentencing is a material element of every plea agreement, and we cannot say either that Russell would have pleaded guilty under the plea agreement without the ten-year cap on

8

his sentence or that the State would have agreed to the terms of the plea agreement without its erroneous understanding of Indiana Code Section 35-50-1-2.[4] And we reject Russell's other arguments in his supplemental brief that the plea agreement, including the sentencing cap, should be upheld. In particular, Russell states:

> Neither Russell nor the State wished to undo the agreement they reached. Doing so would expose Russell to a much greater overall sentence, and it would require the State to spend a great deal of time and money taking the case to trial. Most importantly, declaring the plea agreement void and unenforceable in this case would require the young victims, who likely took comfort in knowing that the matter had finally been resolved, to appear in court and testify about their abuse.

Appellant's Supp. Brief at 9.

To the contrary, the parties' desire for expediency has no bearing on the validity of the plea agreement. Moreover, while we acknowledge the local prosecutor's discretion in such matters, there is no question that this case is exactly the type of case that the State should be expending its time and resources prosecuting. And we cannot sanction an illegal sentence. While we respect the consideration that the victims should be spared the burden of testifying at trial, this concern does not justify enforcement of an illegal agreement.

The parties also maintain that the mischaracterization of Russell's crimes as an episode of criminal conduct is harmless because a ten-year sentence could otherwise be lawfully imposed with these convictions, and the parties could have agreed to cap his sentence at ten years without invoking the statute. Thus, they contend that the plea agreement survives because the references to the statutory limitation in the plea

---

[4] Although the parties have provided us with supplemental briefs on this issue, the record is devoid of evidence whether Russell would have entered into the plea agreement absent the illegal sentence.

9

agreement and the sentencing order were surplusage. But we are not inclined to ignore the parties' intent as expressed in the plain language of the agreement. The parties based their plea agreement on a statute that they both now concede does not apply.

Further, and significantly, the trial court likewise relied on the statute when it accepted the plea agreement and imposed Russell's sentence. The parties assume that the trial court would have approved the plea agreement with the sentence capped at ten years without the stated statutory limitation, but we read the trial court's sentencing order differently. The trial court found that, "the nature and circumstances of the crime are extreme and aggravate the sentence." Appellant's App. at 97. And the court imposed three sets of concurrent eight-year sentences with the three sets to be served consecutively, for a total executed sentence to the Department of Correction of twenty-four years, after which the court stated, "However, pursuant to the limitation imposed by IC § 35-50-1-2, defendant's aggregate, consecutive sentence is limited to ten (10) years[.]" Id. at 98. The sentencing statement indicates that, but for the statutory limitation, the trial court would have sentenced Russell to twenty-four years executed. Thus, expressly relying on the language of the parties' plea agreement, the trial court incorrectly applied the statutory limitation imposed by Indiana Code Section 35-50-1-2. Accordingly, as it stands now, the mistaken statutory reference cannot be severed because it was a material element of both the plea agreement and the sentence, and we cannot say that Russell, the State, or the trial court would have agreed to or accepted the plea without the erroneous language that purported to cap Russell's sentence. We must conclude that the misapplication of the statute was not harmless and, therefore, not severable.

10

In sum, the plea agreement and sentence were based on the faulty premise that Russell's sentence must be limited to ten years under Indiana Code Section 35-50-1-2(c). Thus, the sentence imposed pursuant to the plea agreement was an erroneous sentence, and we cannot uphold Russell's plea agreement with the sentencing cap intact. See Lee, 816 N.E.2d at 38. We reverse Russell's sentence and remand to the trial court with the following instructions: on remand, Russell shall first have the option to ratify and proceed with the current plea agreement without the illegal sentencing limitation. If he chooses that option and enters an open plea on all five counts, the trial court shall have total discretion in resentencing Russell, and he would face a possible maximum sentence of fifty-six years.[5] If he does not exercise that option within thirty days after this opinion has been certified (unless extended by the trial court), the plea agreement shall be vacated. See, e.g., Alvey v. State, 911 N.E.2d 1248, 1251 (Ind. 2009) (holding that the defendant had the option to keep his plea agreement without an unenforceable provision).

Reversed and remanded with instructions.

VAIDIK, C.J., and BROWN, J., concur.

---

[5] In exchange for Russell's plea, the State dismissed four counts. If Russell rejects the current plea agreement and the State reinstates the dismissed counts, Russell's possible maximum sentence would be sixty-eight years. The trial court has discretion to run all of the convictions consecutively in light of the aggravators, including the fact that Russell abused his position of trust with each of the three victims.