**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 12 2014, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NIKKI RUSSELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1312-CR-587 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1212-FC-3873

**September 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Nikki Russell appeals the ten-year aggregate sentence imposed following her guilty plea to five counts of class C felony neglect of a dependent and two counts of class C felony criminal confinement. She contends that the trial court abused its discretion by failing to recognize her guilty plea and her lack of prior criminal activity as significant mitigating factors. We conclude that the trial court did not abuse its discretion and affirm Nikki's sentence. We also conclude that the sentencing order is unclear, and therefore we remand with instructions for the trial court to clarify its sentencing order in conformity with the plea agreement.

**Facts and Procedural History**

Nikki and Larry Russell were married and had two children, J.R. and L.W. They also had three adopted children, P.G., B.J., and T.D. P.G. was nine years old when he was adopted by the Russells. He is four years older than B.J. and five years older than T.D. In 2012, P.G. was seventeen. All three children are considered mentally disabled. Tr. at 21.

Between August 23 and November 23, 2012, Nikki and Larry repeatedly abused and neglected P.G., B.J., and T.D. The Russells kept their adopted children in a padlocked room usually for fifteen hours a day but sometimes for days at a time. The Russells removed all the light fixtures from the room and nailed plywood over all the windows. Sometimes they tied P.G. and B.J. to their beds with rope wrapped in duct tape. They also would put socks in the children's mouths and duct tape their mouths shut. At night, the children were not permitted to leave their bedroom to use the bathroom, so they urinated in their pants. The

children obtained a bottle in which to urinate and kept it in their bedroom. When Nikki discovered the bottle, she made the children get in the bathtub and poured the contents of the bottle on them. If B.J. wet his bed at night, the Russells put Icy Hot on his penis and anus, making him scream. Nikki duct taped a diaper on B.J. at night.

In addition, Nikki deprived P.G., B.J., and T.D. of food. Sometimes she punished them by giving them no food at all. P.G. made a hole in the bedroom ceiling to crawl through so that he could sneak food from the kitchen at night. Also, if the Russells thought that P.G. and B.J. were lying or withholding information, they tied their hands behind their backs and dunked them under water in the bathtub.

On November 22, 2012, Thanksgiving Day, the Russells locked P.G., B.J., and T.D. in their bedroom all day. Nikki, Larry, J.R., and L.W. had a Thanksgiving feast. Nikki gave P.G., B.J., and T.D. two microwaved burritos and half a glass of water for dinner. That night, Nikki tied P.G. and B.J. to their beds. She hit P.G. in the face, giving him a bloody nose. The blood ran down his face and pooled in his ear. To punish P.G. and B.J. for talking without permission, Nikki stuffed socks in their mouths and duct-taped their mouths shut.

The following morning, P.G. broke free from his bed and used his teeth to pull the nails out of the boards covering the window. He broke the window, climbed down the roof, and jumped to the ground. He tried to make his way to the courthouse to find a police officer, but his bare feet were so cold that he had to stop. A bystander took him to the hospital and called the police.

Police officers met P.G. at the hospital. When they arrived, P.G. had already eaten two trays of food and was still hungry. P.G. was emaciated. He had abrasions on his wrists and ankles, a bloody nose, and dried blood in his ear. He had a bruised handprint on his neck, finger impressions under his arms, and bruises on his legs. Police officers also went to the Russells' home. They found yellow rope, bars, and padlocks on the adopted children's bedroom doors and duct tape on their bed posts. B.J. had raised red marks on his wrists.

The State charged Nikki with fourteen counts: Counts 1-3, class C felony neglect of a dependent; Counts 4-5, class C felony criminal confinement; Counts 6-8, class D felony criminal confinement; Counts 9-10, class C felony neglect of a dependent; Count 11, class D felony neglect of a dependent; Counts 12-13, class A misdemeanor battery by body waste; and Count 14, class A misdemeanor battery resulting in bodily injury. The State and Nikki entered a plea agreement in which she pled guilty to Counts 1 through 5, 9, and 10. The State agreed to dismiss the remaining counts. As for Nikki's sentence, the plea agreement read as follows:

> The State agrees that, as charged, the sentence [Nikki] can receive in this matter pursuant to Indiana Code [Section] 35-50-1-2(c) shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which she has been convicted and is being sentenced. As such, the Parties agree and the State will recommend that [Nikki] be sentenced to the Indiana Department of Correction for a total term of imprisonment of no more than ten (10) years on Counts 1, 2, 3, 4, 5, 9 and 10. All parties shall be allowed to argue sentencing before the Court.

Appellant's Supp. App. at 76.

At the submission of plea and sentencing hearing, the State submitted a recording of a phone conversation between Nikki and her daughter while Nikki was in jail. In that

conversation, Nikki gave instructions to her daughter to fill another inmate's prescriptions and sell the pills. State's Ex. 1. Nikki informed her daughter of the street value of the pills and to whom she should sell them. *Id.*

After hearing testimony from Nikki's family and argument from counsel, the trial court found as aggravating factors that the harm, loss, or damage suffered by the victims was significant and greater than the elements necessary to prove the offenses and that the victims were mentally or physically infirm. As mitigating factors, the trial court found Nikki's childhood abuse, her abusive husband, and her acceptance of responsibility and remorse. Tr. at 53-55. The trial court also opined that the recorded phone conversation showed that Nikki knew "how to think and act on [her] own" and "how to make decisions when it comes to criminal activity." *Id.* at 57-58. The trial court concluded that the nature and circumstances of the crimes warranted an aggravated sentence[1] and sentenced Nikki as follows:

> It is apparent the prison-like accommodations were the norm for the victims. They endured inhumane conditions when what they needed, what they wanted, was parents to love and care for them after they had been taken away from their biological parents. Each of the victims deserve[s] justice. The court finds the following to be an appropriate sentence in this case. On each of Counts 1, 4 and 9 involving P.G., the defendant is sentenced to the Department of Correction for seven (7) years, concurrent with one another. On each of Counts 2, 5 and 10, involving B.J., the defendant is sentenced to the Department of Correction for seven (7) years, concurrent with each other, but consecutive to Counts 1, 4 and 9. On Count 3, involving T.D., the defendant is sentenced to the Department of Correction for seven (7) years, consecutive to Counts 1, 4 and 9 and Counts 2, 5 and 10. However, pursuant

---

[1] The parties stipulated that the trial court could consider all of the evidence relating to Nikki that was introduced during Larry's sentencing hearing, and the court took judicial notice of that evidence. Tr. at 19. However, that evidence is not included in the record before us. If a trial court takes judicial notice of other court records in sentencing a defendant, those records should be made part of the sentencing record.

to the limitation imposed by I.C. § 35-50-1-2, defendant's aggregate, consecutive sentence is limited to ten (10) years.

*Id*. at 58; Appellant's App. at 5-6.

## Discussion and Decision

Nikki appeals her aggregate sentence. However, the parties do not agree as to what that sentence is. Nikki argues that the trial court abused its discretion in imposing a *ten-year* sentence, the maximum it could impose pursuant to the plea agreement. The State asserts that the trial court did not err in imposing a *twenty-one-year* sentence. Thus, as a threshold matter, we must determine what Nikki's sentence is.

Nikki pled guilty pursuant to a plea agreement. It is well established that "plea agreements are in the nature of contracts entered into between the defendant and the State." *Lee v. State*, 816 N.E.2d 35, 38 (Ind. 2004). As our supreme court has explained,

> A plea agreement is contractual in nature, binding the defendant, the state and the trial court. *The prosecutor and the defendant are the contracting parties*, and the trial court's role with respect to their agreement is described by statute: If the court accepts a plea agreement, *it shall be bound by its terms*.

*Id*. (quoting *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind. 1994)) (emphases added).

Here, the plea agreement specifically provides that "the Parties agree" that Nikki's sentence would be limited to a term of imprisonment of no more than ten years. Appellant's Supp. App. at 76. Thus, the trial court was bound under the terms of the plea agreement to impose an aggregate sentence that was no more than ten years. The sentencing order and abstract of judgment are somewhat confusing in that the trial court ordered a twenty-one-year aggregate sentence and also ordered that the aggregate sentence be limited to ten years.

6

Accordingly, we remand for the trial court to clarify its sentencing order in conformity with the plea agreement.

We observe that the State and the trial court believed that Nikki's aggregate sentence was subject to the limitation in Indiana Code Section 35-50-1-2(c). That statute provides in relevant part,

> [E]xcept for crimes of violence,[2] the total of the consecutive terms of imprisonment … to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

*Id*. "'[E]pisode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b).

Whether Nikki's aggregate sentence is subject to the limitation in Section 35-50-1-2(c) is questionable. In fact, another panel of this Court recently addressed, sua sponte, the statute's applicability to Larry's sentence. *Russell v. State*, 11 N.E.3d 938 (Ind. Ct. App. 2014), *trans. pending*. Like Nikki, Larry pled guilty to multiple charges based on his conduct toward the children, and his sentence was limited to ten years pursuant to plea agreement.[3] He was sentenced to three consecutive eight-year terms, which the trial court limited to ten years "pursuant to the limitation imposed by I.C. § 35-50-1-2." *Id*. at 941. On appeal, the court determined that Larry's offenses did not constitute an episode of criminal conduct

---

[2] Neither neglect of a dependent nor criminal confinement is listed as a "crime of violence" under the statute. Ind. Code § 35-50-1-2(a).

[3] The precise language of the sentencing provision in Larry's plea agreement is not set forth in the appellate opinion.

because "the factual basis for [Larry's] guilty plea encompasses the evidence of multiple acts of neglect and confinement that occurred repeatedly over the course of three months." *Id*. at 941. Accordingly, the court concluded that Larry's sentence was not subject to the limitation imposed by Section 35-50-1-2(c) and that the sentence imposed by the trial court contravened the statute and was an illegal sentence. *Id*. at 942. The court treated the sentencing provision in Larry's plea agreement as an illegal provision that could not be severed from the rest of the plea agreement because it was a material element of the contract and concluded that the plea agreement was void and unenforceable as a matter of law. *Id*. at 943-44.

In Nikki's case, the plea agreement specifically provides that "the Parties agree" that Nikki would not be sentenced to more than ten years. Appellant's Supp. App. at 76. We do not find this simple agreement contrary to statute or illegal. Nikki's offenses were all class C felonies. The sentencing range for a class C felony is two to eight years, with an advisory sentence of six years. Ind. Code § 35-50-2-6. Thus, a ten-year aggregate sentence falls within the range permitted by the Indiana Code. Put another way, the State and Nikki could have agreed to a cap of ten years regardless of whether Section 35-50-1-2(c) was applicable.

The plea agreement also provides as follows:

> *The State agrees* that, as charged, the sentence [Nikki] can receive in this matter pursuant to Indiana Code [Section] 35-50-1-2(c) shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which she has been convicted and is being sentenced.

Appellant's Supp. App. at 76 (emphasis added). Nikki did not agree that her sentence was governed by Section 35-50-1-2(c). There is no evidence that Nikki entered into the plea

8

agreement with the misconception that Section 35-50-1-2(c) applied. During plea negotiations, a defendant does not have the affirmative obligation to inform the State that the maximum possible sentence is greater than it believes. The State may have been mistaken that Section 35-50-1-2(c) applied to Nikki's aggregate sentence, but the State's mistaken belief does not render the parties' agreement to limit a sentence to a term of years within the range permitted by law illegal. In sum, we find no basis for vitiating Nikki's plea agreement.

We now turn to the merits of Nikki's argument that the trial court abused its discretion by failing to recognize her guilty plea and her lack of criminal history as significant mitigating factors. We observe that

> the determination of mitigating circumstances is within the discretion of the trial court. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record.

*Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

Turning first to Nikki's contention regarding her guilty plea, we observe that in general "a defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." *Anglemyer v. State*, 875 N.E.2d 218, 220 (Ind. 2007) (quoting *McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007)), *opinion on reh'g*. However, the significance of a guilty plea as a mitigating factor varies from case to case. *Id.* at 221. Where a defendant willingly enters a plea of guilty, saving the court time and resources, he has "'extended a

9

substantial benefit to the state and deserves to have a substantial benefit extended to him in return.'" *Scheckel v. State*, 655 N.E.2d 506, 511 (Ind. 1995) (quoting *Williams v. State*, 430 N.E.2d 759, 764 (Ind. 1982)). On the other hand, "a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility, or when the defendant receives a substantial benefit in return for the plea." *Anglemyer*, 875 N.E.2d at 221.

Our review of the record shows that the trial court did not overlook Nikki's guilty plea. The trial court discussed Nikki's acceptance of responsibility, stating, "I think the acceptance was more pragmatic. … I think the evidence in this case suggests to me that your acceptance in this case should be undercut by the fact there was a pretty strong case against you." Tr. at 54. The trial court also stated that it was skeptical of her expression of remorse. *Id.* Nevertheless, the trial court did give Nikki's acceptance of responsibility and remorse some mitigating weight. *See id.* at 55 ("I give your acceptance or responsibility and some remorse a little more credence than I give [Larry's]."). We find no abuse of discretion here. *See Cardwell v. State*, 895 N.E.2d 1219, 1223 (Ind. 2008) ("The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.").

As for Nikki's criminal history, she argues that she had only one prior offense, a status offense for truancy when she was seventeen. A trial court may consider that a defendant "has no history of delinquency or criminal activity" as a mitigating factor. Ind. Code § 35-38-1-7.1(b)(6). However, "[t]rial courts are not required to give significant weight to a

10

defendant's lack of criminal history." *Stout v. State*, 834 N.E.2d 707, 712 (Ind. Ct. App. 2005), *trans. denied.* Nikki does have a history of delinquency, and the recorded phone conversation with her daughter shows her propensity to engage in criminal activity. Therefore, the trial court did not abuse its discretion in failing to find that her lack of criminal history was a significant mitigating factor.

Based on the foregoing we affirm Nikki's ten-year sentence. Having concluded that the trial court's sentencing order is confusing, we remand to the trial court for clarification consistent with the plea agreement.

Affirmed and remanded.

FRIEDLANDER, J., and BRADFORD, J., concur.