JOSEPH A. DUBE *v.* STATE OF INDIANA.

[No. 371S55. Filed November 22, 1971.]

*Mrs. Harriette Bailey Conn*, Public Defender of Indiana, *Paul J. Baldoni*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *William D. Bucher*, Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from the trial court's denial of appellant's Petition for Post Conviction Relief. Appellant was charged by affidavit on April 2, 1968, with the crime of forgery, and after several deferments or continuances, appellant was arraigned on June 27, 1968. Appellant entered a plea of guilty to the offense charged and was sentenced on August 5, 1968, for a period of not less than two (2) nor more than fourteen (14) years in the Indiana State Prison. Appellant was not committed until December 20, 1968, when his sentence was modified to commitment to the Indiana Reforma-

tory. December 2, 1969, appellant filed a Petition for Post Conviction Relief, and a hearing was held on March 13, 1970. On June 8, 1970, findings of fact and conclusions of law were filed by the court denying the petition. Appellant then filed his motion to correct errors and for rehearing on August 7, 1970, and a hearing was held on September 21, 1970. There is no indication in the record of the court's ruling on this motion. Also on September 21, 1970, appellant filed a motion to set aside the judgment of conviction and to withdraw his guilty plea, which was argued on December 4, 1970, and denied.

Joseph A. Dube, appellant, and "flunky" in a large forgery ring, was arrested on forgery charges in Fort Wayne, Indiana. Dube contended he was not of sound mind at the time of the commission of the forgery. After making a statement, a deal was arranged whereby if Dube would cooperate by showing the authorities where the equipment was located and by identifying and testifying against the other members of the gang the prosecuting attorney would recommend a suspended sentence. Dube made quite clear that should he incriminate others his life would be in danger if he were imprisoned.

Dube never talked with the prosecutor personally but Dube's attorney and the prosecutor arranged the deal. Dube was assured by the chief investigator for the prosecutor's office and two State Policemen that the prosecutor would recommend a suspended sentence. Dube showed the police where a printing press and other equipment was located in Marion, Indiana. He gave them information against two other local members of the gang, one of whom subsequently pleaded guilty to federal charges and the other drowned. He testified against the ring leader at a grand jury hearing in Indianapolis. Dube cooperated fully with the authorities in shattering the forgery ring.

At arraignment on June 27, 1968, Dube was represented by counsel and entered a plea of guilty to forgery. One of the questions asked by the judge at the hearing was, "Has anyone made any promises to you or threatened you in any way to induce you to plead either guilty or not guilty?" To which

Dube replied, "No, Sir." However, Dube's attorney had coached Dube on these questions and answers. Dube said he answered in the negative because he felt to do otherwise would seriously threaten the arrangement. He stated, "I figured that if I opened my mouth, that I'd probably get them into trouble or get myself into worse trouble, more or less afraid. However, it wasn't to lie to the Judge, but it's just that the attorney says to plead guilty." The prosecutor did not recommend a suspended sentence at that time but did at the time of sentencing on August 5, 1968. However, much to the shock of everyone present but the Judge, Dube was sentenced for two (2) to fourteen (14) years in the State Prison.

Dube's attorney requested a rehearing and talked to the Judge a number of times before actual commitment. The prosecutor and the chief investigator for the prosecutor's office also spoke with the judge. All of them told the Judge of the promise and that Dube would be in grave danger should he be committed. The Judge did not change his sentence except that he changed the locus of imprisonment from the State Prison to the Indiana Reformatory even though Dube was over thirty (30) years of age.

Upon commitment, Dube's fears became a nightmarish reality, for the word was spread that he was a "stoolpigeon." On two occasions at the Reformatory, cans were dropped from the top of a cell house which struck him glancing blows. On another occasion he was threatened by four inmates who told him he had better stay close to a guard. Dube was then transferred to the State Prison. For his own protection, he requested to be placed in seclusion. After fourteen to fifteen months, the seclusion was in his words "driving me crazy" and he requested to be let out into the general prison population. Reluctantly, the prison officials agreed. Dube was then involved in three altercations in two months arising out of his previous cooperation with the police. He said he frequently had to dodge homemade knives and that he once was chased out of a prison shop by a prisoner with a pair of scissors.

The essential question is whether Dube's plea of guilty was voluntarily, knowingly, and freely made or whether it was induced by the promise of a suspended sentence. A corollary question is whether the Judge should have made a further investigation when he discovered, before commitment, that promises had been made.

We recognize that so-called plea bargaining is a wide-spread practice in our criminal courts and that it often proves beneficial for both parties. For the State, the massive backlog of cases in our courts is well known. If a conviction can be obtained without the need for a formal trial the wheels of justice are accelerated thus enabling law enforcement personnel to conduct more extensive investigations and vigorous prosecutions of other cases in the fight against crime. For the defendant, it clearly increases the likelihood of a lighter sentence than he might otherwise receive. Were there no plea bargaining allowed, the prosecution would have no reason to seek other than the maximum sentence. Such a procedure also relieves the defendant and his family of a great deal of anxiety and embarrassment which might result from a protracted jury trial. However, with these benefits there are accompanying dangers inherent in the practice. This procedure must not be used as a coercive force to obtain pleas of guilty but must be the result of an agreement which both sides find mutually beneficial. For this reason it is essential that the trial court make certain that the plea of guilty is voluntary and that the defendant clearly understands the consequences of his plea. Several very important constitutional rights are waived by a defendant when he pleads guilty, including the right against self-incrimination and the right to a trial by a jury of his peers. When a waiver of these important rights occurs we must scrutinize the situation closely to make certain that the waiver was freely, knowingly, and voluntarily made with full knowledge of the consequences.

Clearly, the mere expectation of receipt of a lesser sentence would not be sufficient to make the plea involuntary. *Brady* v.

*United States* (1970), 397 U. S. 742; *United States* v. ██ *Marcus* (7th Cir. 1954), 213 F. 2d 230; *United States* v. *Shneer* (3d Cir. 1952), 194 F. 2d 598. However, more than a mere expectation existed in this instance. Dube, who has only a fourth grade education, was told by his attorney that, although the decision was up to the Judge, he had *always* gone along with the prosecutor's recommendation. Add to this the assurance given Dube by police officers that the prosecutor would make the recommendation as long as Dube cooperated, and the voluntariness of the guilty plea becomes highly suspect.

In the case of *Long* v. *State* (1952), 231 Ind. 59, 106 N. E. 2d 692 the appellant was made to believe that he would receive a suspended sentence if he withdrew his plea of not guilty and entered a plea of guilty. This Court there stated:

> "This conduct even on the part of his own attorneys, would amount to a fraud upon appellant, which the trial court should neither allow nor countenance. It is not a sufficient base upon which to found a judgment taking away the right of liberty from a defendant charged with crime." 231 Ind. at 62, 106 N. E. 2d at 693.

This statement fits the situation of the case at bar. The prosecutor promised to recommend a suspended sentence and Dube was told by his attorney that the judge always followed the prosecutor's recommendations. Dube stated he pleaded guilty relying on these statements that he would receive a suspended sentence. "A guilty plea, if induced by promises . . . which deprive it of the character of a voluntary act, is void." *Machibroda* v. *United States* (1962), 368 U. S. 487, 493. In *United States* v. *Shneer* (E.D. Pa. 1952), 105 F. Supp. 883, although Shneer's attorney knew the court would not be bound by any recommendations, the reasonable reliance by Shneer upon his attorney's assurance that he would not be sentenced to jail misled him into changing his plea of not guilty to *nolo contendere*. In the interest of justice Shneer was permitted to withdraw his plea. In *Ward*

v. *United States* (6th Cir. 1940), 116 F. 2d 135, the appellant furnished the federal government with substantial information and made several trips from his home in Chicago to Cincinnati in order to testify for the government. Appellant cooperated fully with the government. In exchange for this cooperation appellant was led to believe that upon his plea of guilty he would receive a suspended sentence, although Government counsel stated he could not say definitely what punishment would be imposed. The Sixth Circuit Court of Appeals held that the trial court erred in not permitting appellant to withdraw his plea of guilty. See also, *People* v. *Bannan* (1961), 354 Mich. 471, 110 N. W. 2d 673; *State* v. *Hovis* (1944), 353 Mo. 602, 183 S. W. 2d 147; *Griffin* v. *State* (1913), 12 Ga. App. 615, 77 S. E. 1080.

The allowance of the withdrawal of a guilty plea is within the sound discretion of the court, *Hathaway* v. *State* (1968), 251 Ind. 374, 241 N. E. 2d 240; *Scharbrough* v. *State* (1968), 249 Ind. 316, 232 N. E. 2d 592; *Goff* v. *State* (1960), 240 Ind. 267, 163 N. E. 2d 888. However, the trial court unreasonably exercised its discretion when it failed to investigate further after discovering a deal had been consummated. Apparently the court was not aware of the promises at the time Dube pleaded guilty nor even at the sentencing. But, between the time of sentencing and the commitment the judge became well aware that promises had been made as many persons spoke with him on the subject during the interim. A judge should have an affirmative duty to make such an investigation when information comes to his attention that indeed a plea may have been induced by promises. Equity and justice would demand it. In *Allman* v. *State* (1968), 253 Ind. 14, 23, 235 N. E. 2d 56, 62( this Court stated that it is extremely important for the trial court to ensure that all rights of a defendant pleading guilty are zealously protected, and that when a withdrawal of a plea of guilty is requested "the trial court's concern should not be directed solely to the court's own legal justification in originally ac-

cepting the plea of guilty." It is the trial court's duty to make a reasonable inquiry into the facts to discover whether a plea of guilty was entered freely and understandingly. *Gates* v. *State* (1962), 243 Ind. 325, 183 N. E. 2d 601; *Dearing* v. *State* (1951), 229 Ind. 131, 95 N. E. 2d 832. In order to determine whether a plea of guilty was entered freely and understandingly, the court must look to the circumstances surrounding the entry of the plea. *Hathaway* v. *State, supra.* Normally the questioning done at the time of the plea is sufficient, but when facts tending to show the plea was involuntary come to the attention of the court a further investigation should be initiated.

> "Where disclosure of a plea agreement is made to the trial judge either before or after acceptance of the plea as recommended, it will not be difficult to determine if plea agreements have been kept, and in the event the agreement is . . . not acceptable to the court, the defendant should be afforded the option of either withdrawing or reaffirming his plea, . . ." *State* v. *Wolske* (1968), 280 Minn. 465, 160 N. W. 2d 146, 152.

The A.B.A. Project on Minimum Standards for Criminal Justice stated the following in its Standard Relating to Pleas of Guilty (Approved Draft, 1968) :

> "§ 1.5 Determining Voluntariness of Plea. The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. *By inquiry of the prosecuting attorney and defense counsel,* the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, *the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court.* The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea." (our emphasis)

This is not a rule or precedent of Indiana so these procedures were not an absolute requirement at the arraignment. How-

ever, we do consider these steps a wise course to follow, and, once the trial court learned of the plea agreement, such a course was essential to avoid any possible misunderstandings or miscarriages of justice. Then if Dube indicated that his guilty plea was indeed induced by these promises, he should be allowed to withdraw his plea of guilty and enter a plea of not guilty.*

The evidence in the case at bar indicates Dube's plea of guilty was tainted by assurances that the judge always went along with the prosecutor's recommendations thus making the voluntariness of his plea highly questionable. This is *not* a case of an asserted inducement resting almost entirely upon the testimony of appellant lacking in reasonable corroboration. Clearly, Dube did not realize the consequences of his guilty plea.

> ". . . [T]he court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. . . . The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." *Kercheval* v. *United States* (1927), 274 U. S. 220, 224.

In the instant case, it is undoubtedly fair and just to allow appellant, Dube, to substitute a plea of not guilty for his plea

---

* In its approved draft of Standards Relating to Pleas of Guilty, the A.B.A. has recommended procedures which could prevent the problems which arose in this case, § 3.3 provides: "Responsibilities of the trial judge. (a) The trial judge should not participate in plea discussions. (b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere."

of guilty. It is important for all segments of our society to believe that our court systems dispense justice. This includes the criminals themselves as well as the law abiding citizens, and especially those criminals who have cooperated fully in police investigations. By allowing appellant to withdraw his plea we do not set him free but merely allow him to have a trial on the merits.

For all the foregoing reasons the judgment of the trial court is reversed with instructions to vacate its judgment of conviction, and allow appellant to withdraw his plea of guilty.

Judgment reversed and remanded with instructions.

Arterburn, C. J., Givan and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported in 275 N. E. 2d 7.