Donald DAVIS, Appellant–
Petitioner Below,

v.

STATE of Indiana, Appellee–
Respondent Below.

No. 49A02–9104–PC–148 [1].

Court of Appeals of Indiana,
Third District.

Nov. 14, 1991.

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, appellant-petitioner.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, appellee-respondent.

STATON, Judge.

Donald Davis appeals the denial of his petition for post conviction relief in which he sought to withdraw his plea of guilty to armed robbery. He presents three (restated) issues for our review:

I. Whether Davis was adequately advised of his right to a jury trial?

II. Whether Davis' plea of guilty was induced by promises of leniency?

III. Whether the trial court abused its discretion in overruling Davis' motion to withdraw his guilty plea?

We affirm.

On May 2, 1974, Davis pled guilty to a charge of armed robbery. Pursuant to the terms of a plea agreement disclosed to the guilty plea court, the prosecutor recom-

1. This case was diverted to this office by order of the Chief Judge.

mended sentencing under the Minor's Statute.[2]

On May 25, 1974, the sentencing court declined to follow the *recommendation* of the prosecutor that Davis be sentenced under the Minor Statute. The *recommendation* was made by the prosecutor as part of the guilty plea agreement. Davis was sentenced to ten years. Later, he made an oral motion to withdraw his guilty plea which was overruled.

On June 28, 1988, Davis filed a *pro se* petition for post conviction relief, amended September 11, 1990. Following an evidentiary hearing, Davis' petition was denied on December 5, 1990.

## I.

### *Advice of Right to Jury Trial*

■ Davis alleges that the trial court failed to advise him of his right to a jury trial before accepting his guilty plea. IC 1971, 35–4.1–1–3, effective July 26, 1973, required that the trial court address a defendant and advise him of his constitutional rights.[3]

Davis' Motion to Enter a Plea of Guilty provided in pertinent part:

"I understand that I may, if I so choose, plead NOT GUILTY to any offense charged against me, and that if I choose to plead NOT GUILTY the Constitution guarantees me:

(a) The right to a speedy and public trial by jury.

(b) The right to see and hear all the witnesses against me at my trial.

(c) The right to the presumption of innocence and to force the State to prove the charge against me beyond a reasonable doubt, with no requirement on my part to prove anything.

(d) The right to testify or not to testify at my trial; to subpoena witnesses and present any evidence in my favor.

(e) The right to the assistance of counsel at every stage of the proceedings, including upon an appeal if I am convicted, and that if I do not have the money for an attorney the Court will appoint one for me at public expense."

Record, p. 21.

At the guilty plea hearing, the court addressed the advice of rights section contained within the tendered Motion to Enter a Plea of Guilty:

COURT: Did you read this written motion before you signed it and filed it today?

DAVIS: Yes, sir.

COURT: Did you understand what you read?

DAVIS: Yes.

COURT: I want to call your attention to your constitutional rights that are set out in paragraph eight of this written motion. It says that you have the right to plead not guilty and to have a trial. Do you understand that?

DAVIS: Yes, sir.

COURT: And if you have a trial, you have the right to see and hear the witnesses that are brought against you, that you are presumed innocent, and to force the State to prove this charge against you beyond a reasonable doubt before you can be convicted, and you have no requirement to prove anything, the State must prove the charge. You have the right to testify or not to testify at your trial, as you see fit, you have the right to subpoena witnesses and to present any evidence in your favor. You have the right to have an attorney represent you at all times. Do you understand those rights?

DAVIS: Yes.

COURT: Do you understand that when you enter a plea of guilty that you are giving up those constitutional rights?

DAVIS: Yes, sir.

Record, pp. 45–46.

---

**2.** IC 1971, 35–8–3–1 [subsequently repealed].

**3.** I.C. 35–4.1–1–3 [subsequently repealed] mandated that a defendant at a guilty plea hearing be personally advised by the trial judge of the three constitutional trial rights enumerated in

*Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers).

The record discloses that the trial judge addressed each constitutional right enumerated in I.C. 35–4.1–1–3(c) and specifically directed Davis' attention to the written advice of rights which referenced a "speedy and public trial by jury." Davis nevertheless contends that his guilty plea was not entered knowingly and intelligently because of the trial court's omission of the word "jury."

In *Neeley v. State* (1978), 269 Ind. 588, 382 N.E.2d 714 [4], our supreme court considered a petitioner's claim that he was inadequately advised of his right to confront his accusers as required by I.C. 35–4.1–1–3(c). The trial court did not specifically reference a "right of confrontation" but had elicited an admission from Neeley that his guilty plea was "violating my rights to a trial by jury and confront my accusers." *Id.* at 594; 382 N.E.2d at 717. In determining that Neeley's plea was entered knowingly, intelligently and voluntarily, the court stated:

> "We think the same reasonable teaching applicable to the advisement of *Miranda* rights is applicable to the advisement of *Boykin* rights. Of course, the preferred practice would be for the trial judge to follow Ind.Code § 35–4.1–1–3 (Burns 1975), to the letter. Advising the defendant of his trial rights precisely as described therein would be a fool-proof procedure of insuring against claims such as are raised in the present case.... [W]e find only that on the basis of the entire record the defendant was advised of and understood the substance of his 'right to confront his accusers,' though he was not advised specifically in those words."

*Id.* 269 Ind. at 595–96; 382 N.E.2d at 718.

In the instant case, the record discloses that Davis was advised of and understood his right to a jury trial. We conclude that he waived this right knowingly, intelligently and voluntarily.

## II.

### *Inducement to Plead Guilty*

■ Davis next contends that his guilty plea was induced by promises of leniency. He claims that he understood he would be sentenced under the Minor's Statute because of his cooperation with law enforcement officers and argues that his guilty plea must therefore be vacated under the authority of *Dube v. State* (1971), 257 Ind. 398, 275 N.E.2d 7 and *Watson v. State* (1973), 261 Ind. 97, 300 N.E.2d 354.[5]

At the hearing on his motion for post conviction relief, Davis testified that he gave a "clean-up" statement to Detective Grant of the Indianapolis Police Department. He stated that Detective Grant indicated this would "be in his best interests" and "look good under the plea bargain." Record, pp. 109–110. However, Davis admitted that the trial judge informed him that the plea agreement was not binding upon the court. Record, pp. 115, 118.

The post conviction court found that Davis indicated his awareness of the sentencing possibilities throughout the guilty plea proceedings and entered his plea with knowledge that sentencing under the Minor's Statute was only a possibility. The court found Davis' circumstances unlike those of the petitioners in *Dube, supra,* and *Watson, supra,* each of whom had been promised (without disclosure to the guilty plea court) suspended sentences in exchange for cooperation with authorities.

Under the rules of post-conviction relief, the petitioner must establish the grounds

---

**4.** We note that *Neeley* was subsequently overruled in *German v. State* (1982), Ind., 428 N.E.2d 234, *reh. denied. German* was overruled in *White v. State* (1986), Ind., 497 N.E.2d 893. The *Neeley* decision concerned compliance with I.C. 35–4.1–1–3 [subsequently repealed] which required that the trial court "address" a defendant and inform him of his rights. The instant case likewise concerns the entry of a guilty plea in 1974 under I.C. 35–4.1–1–3.

**5.** The *Dube* court held that a duty of inquiry arises where the guilty plea court becomes aware that a plea may have been induced by promises of leniency. However, the mere expectation of a lesser sentence would not be sufficient to make a plea involuntary. *Dube, supra,* 257 Ind. at 402–4; 275 N.E.2d at 9–10. The *Watson* court held that where a guilty plea court has ascertained that promises of leniency have been made, but the court will not order a suspended sentence, the defendant should be permitted to withdraw a guilty plea. *Watson, supra,* 261 Ind. at 99–100; 300 N.E.2d at 355.

for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *St. John v. State* (1988), Ind.App., 529 N.E.2d 371, 374, *trans. denied.* Thus, to succeed on appeal from the denial of his petition, the petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. *Id.*

The record herein discloses no evidence that Davis was promised leniency in exchange for cooperation with authorities. Unlike petitioners Dube and Watson, Davis did not offer information to procure the arrest of any other individual.[6] The terms of the plea agreement fully disclosed to the guilty plea court provided that the prosecutor would *recommend* sentencing under the Minor's Statute.[7]

The guilty plea court informed Davis of the possible penalties he faced and of the advisory nature of the plea agreement:

COURT: So in other words I could give you 10 years, or I could give you 30 years in prison, or I could give you any amount of time in between. Do you understand that?

DAVIS: Yes.

. . . . .

COURT: Now you do understand that I'm not required to follow that recommendation. I could give you 30 years in prison. Do you understand that?

DAVIS: Yes.

. . . . .

COURT: Then you would be eligible for sentencing under the minor statute if that's true. Even if you are eligible, I still don't have to sentence you under the minor statute. Now, if I should decide to sentence you under the minor statute, I could give you 1 day up to a year, flat. I could give you 1 day, 10 days, 30 days, 6 months, 9 months, whatever, up to a

year, or I could give you an indeterminate sentence of 1 to 10. Do you understand that?

DAVIS: Yes.

Record, pp. 48–49.

Davis also indicated to the guilty plea court that he understood the provisions of his Motion to Enter a Plea of Guilty, which provided in pertinent part:

"I understand that even though the prosecuting attorney may have agreed to make a recommendation as to my sentence the Court is not a party to that agreement and is not required to follow that recommendation; that the sentence imposed by the Court may be greater than, the same as, or less than the sentence recommended by the prosecutor. I understand also that if I plead GUILTY my punishment could be the same as, greater than or less than if I had pleaded NOT GUILTY, had stood trial and been convicted by a Court or Jury."

Record, p. 20.

"I declare that I offer my plea of GUILTY freely and voluntarily. I do not do so because of any threat from anyone, or because of any promise from anyone that I would receive probation, a lighter sentence, or any other form of leniency."

Record, p. 21.

The instant case does not involve covert assurances of a suspended sentence as in the *Dube* and *Watson* cases. Davis repeatedly assured the guilty plea court that he understood sentencing under the Minor's Statute was not mandatory. The record amply supports the post conviction court's finding that Davis was not induced to plead guilty by promises of leniency.

### III.

#### Motion to Withdraw Plea

■ Finally, Davis contends that the trial court abused its discretion by refusing to

---

**6.** Davis' Presentence Report indicates that he gave a voluntary statement concerning *his* involvement in the charged robbery as well as *his* involvement in a number of uncharged robberies. Record, pp. 25, 55.

**7.** The prosecutor performed his part of the plea bargain by dismissing a second count against Davis and by recommending sentencing under the Minor's Statute. The guilty plea is not ren-

dered involuntary because the sentencing court imposed a sentence other than that recommended by the prosecutor. *Gross v. State* (1975), 167 Ind.App. 318, 338 N.E.2d 663. Davis' guilty plea was entered before the 1975 enactment of IC 1971, 35–5–6–2, requiring the trial court to advise the defendant if the prosecutor's sentencing recommendation will be followed prior to the acceptance of a guilty plea.

permit withdrawal of his guilty plea after discovery of a "deal" not apparent on the face of the plea agreement.[8]

At the sentencing hearing, the following exchange took place:

COURT: Well, well, well—armed robbery. He could get 2 30–year sentences, could have, now he could have one 30–year sentence. Thirty years is a long time. The State is recommending under the minor statute, is that right?

DYER: That's correct. That's as to Defendant Davis only.

COURT: Right. Well, as I explained, that is only discretionary. And you understand, Mr. Davis, I'm not required to sentence you under the minor statute?

DAVIS: Yes.

COURT: And I told you that before, right?

DAVIS: Yes.

COURT: I really don't know what the answer is, but armed robbery is a serious enough offense that I don't think it can be dealt with in a minimum manner. It leads to killing human beings. Do you have anything to say, Mr. Davis, before I pronounce sentence?

DAVIS: No.

SHAW: Judge, if there's any indication that the Court is not going to follow the plea bargain between the State of Indiana and the defense attorney, we'd ask under *Watson v. State* to withdraw our plea. It was made in good faith on the State of Indiana. All facts were considered by them. They entered into this agreement, and we believe it's a fair one. This boy is entitled to be looked upon as a juvenile, having not been convicted of a felony, and we would make that plea to the Court, that if the Court is not going to follow the State's recom-

mendation, we would ask to withdraw the plea....

Record, pp. 57–58.

The court then imposed upon Davis a 10 year sentence to be served at the Indiana Youth Center. The sentence was accompanied by a recommendation for work release upon eligibility and clemency within two and one-half years. After sentencing, defense counsel requested a ruling on the motion to withdraw. The court distinguished *Watson* as a case involving secret negotiations and overruled Davis' motion to withdraw his plea.

At the post conviction hearing and on appeal, Davis relied upon the language of *Watson, supra,* which provides:

"While it is true, and should remain so, that the trial judge is not bound by any promises or recommendations made by law enforcement officers, he should nevertheless make every effort to ascertain whether or not such promises have, in fact, been made, and when it is learned that such promises have been made and the judge in the exercise of his sound discretion determines that notwithstanding such promises he will not order a suspended sentence, the person charged should then be permitted to withdraw a plea of guilty and enter a plea of not guilty. This Court has thoroughly covered the reasons for this in *Dube v. State, supra.*"

*Id.* 261 Ind. at 99–100; 300 N.E.2d at 355.

Had Davis been promised leniency by law enforcement officers in exchange for information, he would have properly been permitted to withdraw his plea under the authority of *Watson*. However, as discussed in Issue II, *supra,* the record does not disclose evidence that Davis received such a promise of leniency.[9]

Davis entered his plea upon advisement of the court's discretion to disregard the

---

**8.** At the time Davis entered his plea, IC 1971, 35–4.1–1–6(b) provided that, prior to sentencing, the court might allow withdrawal of a plea for any fair and just reason unless the state had been substantially prejudiced by reliance upon the plea.

**9.** The sole evidence presented to the post conviction court concerning statements by a law enforcement officer to Davis consisted of Davis' testimony that: "He [Detective Grant] said that it would be to my best interests and it would look good for me, under the plea bargain, the minor statute." Record, p. 110.

prosecutor's recommendation, as did the petitioner in *Emerson v. State* (1976), 169 Ind.App. 244, 348 N.E.2d 48. Emerson sought to secure vacation of his plea (entered in 1974), contending that he believed he would be sentenced under the Minor's Statute. In affirming the denial of Emerson's petition for post conviction relief, the court observed:

> "The facts now before us differ substantially from those in *Dube* and *Watson.* In open court Emerson executed and tendered a written motion to withdraw his previously entered plea of not guilty and enter a plea of guilty. That motion disclosed the existence of the plea bargain and that the prosecuting attorney had agreed to recommend sentencing under the minors sentencing statute. The motion also contained the following:

> '(7) I understand that even though the prosecuting attorney may have agreed to make a recommendation as to my sentence the Court is not a party to that agreement and is not required to follow that recommendation; that the sentence imposed by the Court may be greater than, the same as, or less than the sentence recommended by the prosecutor. I understand also that if I plead GUILTY my punishment could be the same as, greater than or less than if I had pleaded NOT GUILTY, had stood trial and been convicted by a Court or Jury.'"

*Id.* at 247; 348 N.E.2d at 49–50.

Davis' plea agreement contained a disclosure identical to paragraph 7 of Emerson's plea agreement. Moreover, he was repeatedly advised by the trial court of the possible consequences of his guilty plea and the plea agreement. His contention that the trial court failed to investigate the existence of an independent "deal" is unsupported by the record.

Inasmuch as Davis' guilty plea was entered knowingly, intelligently and voluntarily, we cannot say that the trial court abused its discretion in refusing to grant

Davis' eleventh-hour motion for withdrawal.

Affirmed.

ROBERTSON and SHIELDS, JJ., concur.