MASSA, J.,
dissenting.
It would be one thing to tell the prosecution it must live with its mistaken understanding of our sentencing laws that led to *1229 its inappropriately lenient plea bargain for these monstrous crimes, particularly when the State joins the appellant in asking us to enforce its terms. A deal’s a deal, after all. But our prior holding in Lee does not compel that result—one that severely diminishes judicial review of those terms— and so, for the reasons stated below, I dissent.
In 1988, Phillip Lee pleaded guilty to robbery in exchange for the State’s dismissal of a habitual offender allegation. Lee v. State, 816 N.E.2d 35, 37 (Ind.2004). The plea agreement provided his eight-year robbery sentence would run consecutively to a three-year sentence he was already serving for an unrelated theft conviction. Id. He served both sentences and was discharged, but several years later, in 1996, he was convicted of another crime and was then adjudicated a habitual offender. Id. Seeking to have that subsequent habitual offender adjudication set aside, Lee challenged his prior robbery conviction by petitioning for post-conviction relief. Id. He pointed out—correctly—that the consecutive sentence provision in his plea agreement was illegal; at the time Lee committed the robbery, only those sentences imposed contemporaneously could be ordered to run consecutively.[10] Id. He argued that provision should render the entire agreement void, and his conviction and sentence should be vacated. Id. The post-conviction court rejected his argument, and we affirmed, finding “no compelling reason to set aside the [prior robbery] conviction on grounds that the sentence is later determined to be invalid.” Id. at 39.
Such a result makes sense: Lee had already received the benefit of his bargain when the State dismissed the 1988 habitual offender charge, which reduced his penal exposure by thirty years. Id. at 39-40. And, in any event, he had already served his sentences, rendering the question of their validity moot. Id. at 40 n. 2.
In other words, in Lee, we rejected a defendant’s attempt to exploit a legal error in his plea agreement to obtain a vacated conviction so he could collaterally attack a subsequent habitual offender verdict.
Here, Russell is exploiting a legal error in his plea agreement to obtain a vastly foreshortened sentence. He now complains of placement consequences in DOC and asks us to strictly enforce a particular provision of his plea agreement—as it happens, a provision that rests upon an incorrect statement of the law. But Lee warned that strict enforcement is not always warranted: “Under some circumstances, the appropriate remedy to address an illegal sentence like the one here is to sever the illegal sentencing provision from the plea agreement, and remand the cause to the trial court with instructions to enter an order running the sentences concurrently.” Id. at 40.
I would find this to be one such circumstance, but not because the parties made a mistake of law; if the trial court had found Russell’s ten-year sentence to be appropriate notwithstanding the inapplicable statutory cap, this Court would not be involved. But that’s not all that' happened here. Instead, remand is necessary under these circumstances because the trial court wholly relied upon and incorporated that mistake of law from the plea agreement in *1230 its sentencing order, and that amounts to an abuse of its discretion.
We have said before that a trial court’s misunderstanding of the law constitutes an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490-91 (Ind.2007) (stating a trial court abuses its discretion if it enters a sentencing statement that gives reasons for imposing a sentence that “are improper as a matter of law”), decision clarified on reh’g, 875 N.E.2d 218 (Ind.2007). And our colleagues in other jurisdictions agree. See, e.g., United States v. Adame-Hernandez, 763 F.3d 818, 827 (7th Cir.2014) (reversing the trial court’s rejection of a defendant’s plea agreement because that rejection was based on a misunderstanding of the law: “a district court by definition abuses its discretion when it makes an error of law” (quoting United States v. Rear-Beltran, 457 F.3d 695, 702 (7th Cir.2006))); see also United States v. Diaz-Correa, 287 Fed.Appx. 899, 901 (1st Cir.2008) (“Ordinarily, defendants are bound by their stipulations to guideline calculations in their plea agreements, United States v. Teeter, 257 F.3d 14, 28 (1st Cir.2001), but not where those stipulations are based on errors of law, id.”)', United States v. Whyte, 3 F.3d 129, 130-31 (5th Cir.1993) (vacating sentence and remanding where both parties, the trial court, and the plea agreement mistakenly understated defendant’s mandatory minimum); State v. Presley, 1999-802 (La.App. 3 Cir. 3/1/00); 758 So.2d 308, 310 (vacating plea because defendant had “entered a guilty plea to an offense which does not exist”).
We presume the trial court knows the law, Dumas v. State, 803 N.E.2d 1113, 1121 (Ind.2004), but when record evidence rebuts that presumption, we cannot be sure whether the trial court would have made the same decision had it actually known the law. Indeed, we just recently decided a case that raised a very similar issue. In Berry v. State, the defendant pleaded guilty to burglary and other offenses pursuant to an agreement that stated the trial court had discretion to determine the placement of his executed sentence, but which contained no provision regarding his placement during any potential suspended sentence. 10 N.E.3d 1243, 1244-45 (Ind.2014). In addition to a ten-year executed sentence, the trial court imposed five years suspended, with two of those years to be served on probation and the first of those to be on work release. Id. at 1246. The defendant appealed, arguing the trial court lacked authority to order him to serve his probation in a restrictive placement. Id. at 1247. We reversed the trial court, stating:
With no clear grant of such authority in the agreement itself, no indication that any of the parties understood the plea agreement to confer such discretion, and a specific provision that implies the absence of discretion over the placement of Defendant’s probation, we must conclude that the trial court lacked authority to impose a punitive placement for Defendant’s probation.
Id. at 1249. But we rejected the defendant’s request to instruct the trial court to order the defendant to serve one year of his executed sentence in work release. Id. We noted there was no way to be sure “the trial court would have accepted the plea agreement in the first place, had it realized that it would lack authority to impose a restrictive placement on Defendant’s probation time.” Id. Thus, we remanded the case and gave the trial court the opportunity to consider afresh whether to accept or reject the plea agreement as written. Id.
That same reasoning holds true here; there is no way to be sure the trial court would have accepted Russell’s plea agree *1231 ment had it known the ten-year cap was not statutorily required. Indeed, we have substantial evidence it would not have done so. The court described Russell’s horrific crimes in great detail, expressing the pressing need for justice:
The nature and circumstances of the crimes are extreme and aggravate the sentence. These were not single, isolated incidents of simply going too far with discipline, or bad parenting skills. The victims in this case were foster children needing a safe, loving, nurturing home. What they got, after being adopted by defendant, was a prison cell, without the amenities, and an existence involving torture, starvation, padlocks, deadbolts, and escape. Defendant’s actions were deliberate and time consuming.
While the rest of defendant’s home contained reasonably clean and safe living quarters, including a kitchen with enough food for the family, this was not the case for the victims, whose room can only be described as cold, dark, sparse and depressing. It is evident the defendant planned and executed his crimes over a significant period of time. He spent a considerable amount of time turning part of his home into a penal facility for the three victims. One entrance to their room was boarded, with nails, by a large piece of plywood. Defendant affixed to the outside of the other door a series of latches and padlocks, and an elaborate, homemade, “deadbolt” locking bar passing through the door jamb. There were holes in the ceiling tiles, both upstairs and down, where one of the victims attempted to tunnel through the walls, out of his cell, and into the kitchen to obtain food. At night, the children were restrained to their beds with duct tape and rope.
It is apparent the prison-like accommodations were the ' norm for. the victims. They endured inhumane conditions when what they needed, what they wanted, was parents to love and care for them after they had been taken away from their biological parents. Each of the victims deserve justice.
Sentencing Order at 2 (emphasis added). The court then imposed the maximum sentence for every count to which Russell pleaded guilty, resulting in an aggregate sentence of twenty-four years.[11] But the trial judge capped that sentence, clearly believing his hands were tied: “However, pursuant to the limitation imposed by I.C. 35-50-1-2, defendant’s aggregate consecutive sentence is limited to ten (10) years.” Sentencing Order at 3.
And so it follows that the remedy of Berry is appropriate here: I would reverse and remand to the trial court to reconsider its approval of Russell’s plea agreement, this time based on a correct application of our sentencing laws. Any other outcome begs the question: why even have our trial judges—presumed to know the law and impartially further the interest of justice— approve such agreements?
Plea agreements can be immensely beneficial; they accelerate the wheels of justice and relieve the defendant, the victims, and their families of the harsh anxiety of a criminal trial. Dube v. State, 257 Ind. 398, 402, 275 N.E.2d 7, 9 (1971). But there are “accompanying dangers inherent in the practice,” Id., including a potential sentence that is too light for the crime. E.g., Daniels v. State, 453 N.E.2d 160, 165 (Ind.1983) (affirming trial court’s rejection of *1232 defendant’s plea agreement that took death penalty off the table, concluding the court is not just concerned with the defendant’s voluntariness, but it “must also protect the interests of other members of our society in living in a peaceful, orderly atmosphere where an individual does not have to live in fear of being shot while shoveling snow in his own driveway”).
For this reason, we trust our trial courts to exercise their sound discretion in accepting or rejecting plea agreements. Badger v. State, 637 N.E.2d 800, 803 (Ind.1994). That discretion, however, is not unfettered, and it should not stretch so far as to allow acceptance of an agreement that incorrectly states the law. Likewise, our review of the trial court’s acceptance of a plea agreement is deferential, but it is not a rubber stamp, and we should not affirm a decision based upon a trial court’s legal error. See Rea-Beltran, 457 F.3d at 702 (“In light of the court’s misunderstanding of the law, we have no choice but to find an abuse of discretion in the court’s refusal to accept [the defendant’s] guilty plea.”).
All this is not to say the State couldn’t ultimately plead Russell to ten years, a grossly lenient yet perfectly legal sentence. But if such an agreement is reached and accepted by the trial court, it should be the product of an informed and honest bargaining process, and not a mistake of law. Because the outcome here was dependent upon such a mistaken understanding, apparently shared by all in the room, I respectfully dissent.

. In 1994, the General Assembly amended the statute governing consecutive and concurrent terms, ''overturning] the contemporaneity requirement.” Weaver v. State, 664 N.E.2d 1169, 1170 (Ind.1996). Indiana Code section 35-50-l-2(c) now reads, in relevant part: “The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time.”

. More specifically, although Russell was sentenced to eight years for each of the seven counts, those involving the same individual victim were to run concurrently to each other but consecutive to those involving different victims. The twenty-four-year sentence represents eight years for each victim. Sentencing Order at 3.